| | |
|---|---|
| CHARLOTTE WILLOUGHBY,<br><br>                              Plaintiff,<br><br>v.<br><br>HAIN CELESTIAL GROUP, d/b/a Earth's Best Organics<br><br>                              Defendant. | Case No. 21-970<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.     Plaintiff Charlotte Willoughby, individually and on behalf of all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint against Defendant Hain Celestial Group for its negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the presence or risk of arsenic, lead, mercury, cadmium (collectively "heavy metals") and/or perchlorate or other ingredients in Defendant's Earth's Best Organic Baby Foods (identified below) that do not conform to the labels, packaging, advertising, and statements of these products sold throughout the United States, including in this District. Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class and Sub-Classes (as defined below) including: (i) requiring full disclosure of all such substances and ingredients in Defendant's marketing, advertising, and labeling; (ii) requiring testing of all ingredients and final products for such substances; and (iii) restoring monies to the members of the proposed Classes. Plaintiff alleges the following based upon personal knowledge as well as investigation by her counsel and, as to all other matters, upon information and belief. Plaintiff believes that a reasonable opportunity for discovery will reveal substantial evidentiary support for the allegations set forth herein.

## DEFENDANT MARKETS ITSELF AS SELLING ONLY PREMIUM BABY FOOD THAT IS SAFE FOR BABIES' CONSUMPTION

2.      Defendant manufactures, markets, advertises, labels, distributes, and sells baby food products under the brand name Earth's Best Organics throughout the United States, including in this District. It states that it offers organic infant, baby, and toddler foods that are "pure, quality products you can trust" and touts that it conducts "Rigorous product testing to guarantee quality and safety."[1]

3.      Defendant's packaging and labels further emphasize its alleged use of quality ingredients that are safe for human infant, baby, and toddler consumption by the use of its "Earth's Best" brand name, suggesting that the ingredients and finished product are premium and high quality, and the representation that the Baby Foods (as identified below) are "organic baby food," suggesting that it is appropriate for consumption by babies.

4.      However, nowhere in the labeling, advertising, statements, warranties, and/or packaging does Defendant disclose that the Baby Foods include and/or have a high risk of containing heavy metals or other ingredients that do not conform to the labels, packaging, advertising, and statements.

5.      Indeed, the Baby Foods have been shown to contain significant levels of arsenic, mercury, lead, cadmium, and/or perchlorate—all known to pose health risks to humans and particularly infants. *See* Ex. 1 (Healthy Babies Bright Futures, *What's In My Baby's Food?*); Ex. 2 (heavy metal testing results for Defendant's Baby Foods).

6.      Despite this, Defendant warrants, promises, represents, misleads, labels, and/or advertises that the Baby Foods are free of any heavy metals and perchlorate by making assurances that the foods are organic, high-quality, and safe for infant, baby, or toddler consumption.

---

[1] https://www.earthsbest.com/why-earths-best/our-promise/ (last accessed Feb. 10, 2021).

7.     Defendant asserts that the Baby Foods are appropriate for consumption by infants, babies, and toddlers and that it works "collaboratively with the Baby Food Council (composed of other manufacturers, the Environmental Defense Fund and Cornell University), the Food and Drug Administration, and the Department of Agriculture to continuously refine and improve upon the standards to ensure our products exceed safety and nutrition standards – including reducing the levels of heavy metals that occur naturally in soil and water."[2] According to Defendant, its "rigorous internal standards and testing procedures ensure Earth's Best products meet or exceed the current federal guidelines."[3] These representations are in direct contradiction to the true nature of the Baby Foods' contents, which include, but are not limited to, heavy metals and/or perchlorate.

8.     Defendant also asserts that the Baby Foods are safe and appropriate for consumption by babies through its "Stage" representations, which identify the appropriate age range of individuals that should consume the Baby Food. For example, Stage "1, 4+ months," Stage "2, 6+ months," etc. Each of the Baby Foods contain this "Stage" designation, identifying that it is suitable and appropriate for consumption by a baby or child. Consumers, like Plaintiff, lack the scientific knowledge necessary to determine whether the Defendant's products do in fact contain heavy metals or to know or ascertain the true nature of the ingredients or the quality of the Baby Foods. Reasonable consumers must and do rely on Defendant to honestly disclose what its products contain.

9.     It was recently revealed on information and belief that Defendant was knowingly, recklessly, and/or negligently selling the Baby Foods containing arsenic, mercury, cadmium, lead, and/or perchlorate.

---

[2] https://www.earthsbest.com/parents/faq/ (last accessed Feb. 10, 2021).
[3] *Id.*

10.     A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("Subcommittee") reveals that parents' trust has been violated. *See* Ex. 3. The Subcommittee's investigation of the seven largest baby food manufacturers in the United States, including Defendant, was spurred by "reports alleging high levels of toxic heavy metals in baby foods" and the fact that "[e]ven low levels of exposure can cause serious and often irreversible damage to brain development." Ex. 3 at 2.

11.     The Subcommittee's report revealed that "[i]nternal company standards permit dangerously high levels of toxic heavy metals and…that the manufacturers have often sold foods that exceeded these levels." Ex. 3 at 4.

12.     On August 1, 2019, the FDA received a "secret slide presentation" from Defendant, which showed that its internal policy was to only test ingredients, not final products, which underrepresents the levels of toxic heavy metals in baby foods. Ex. 3 at 5. It also showed that "[m]any of Hain's baby foods were tainted with high levels of inorganic arsenic." Ex. 3 at 5.

13.     "Naturally occurring toxic heavy metals may not be the only problem causing the unsafe levels of toxic heavy metals in baby foods; rather, baby food producers like Hain may be adding ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix." Ex. 3 at 5.

14.     Ingredient testing by Defendant is inadequate; only by testing the final product can the "true danger posed by" the Baby Foods be evaluated. Ex. 3 at 6.

15.     Plaintiff brings this action individually and on behalf of all consumers who purchased the Baby Foods, to cause the disclosure of the presence and/or risk of the presence of heavy metals, perchlorate, and/or other ingredients that do not conform to the labels, packaging, advertising, and statements in the Baby Foods; to correct the false and misleading perception

Defendant has created in the minds of consumers that the Baby Foods are high quality, healthy, and safe for infant consumption; and to obtain redress for those who have purchased the Baby Foods.

## JURISDICTION AND VENUE

16. This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Classes reside in states other than the states in which Defendant is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

17. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Plaintiff has suffered injury as a result of Defendant's acts in this district, many of the acts and transactions giving rise to this action occurred in this District, Defendant conducts substantial business in this district, Defendant has intentionally availed itself of the laws and markets of this district, and Defendant is subject to personal jurisdiction in this district.

## PARTIES

18. Plaintiff Charlotte Willoughby is a citizen of the State of Illinois and a resident of Palatine, Illinois. She purchased Defendant's Baby Foods for her children, including Banana Apricot Pumpkin with Quinoa Pouches, Broccoli Red Lentil Oat Pouches, Butternut Squash Pear Pouches, and Peach Oatmeal Banana baby food jars. Plaintiff purchased Defendant's Baby Foods, from various retail outlets such as a Target store in Munster, Indiana and a Meijer in Rolling Meadows, Illinois from at least September 2019 until late 2020.

19. Prior to purchasing the Baby Foods, Plaintiff saw Defendant's claims on the packaging, including "Earth's Best," the "Stage" representations, and "organic baby food," which she relied on in deciding to purchase the Baby Foods. During that time, based on Defendant's

material omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing by Defendant, Plaintiff was unaware that the Baby Foods contained any level of heavy metals, chemicals, or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed. Plaintiff was injured by paying a premium for the Baby Foods that have no or *de minimis* value—or whose value was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

20.     As the result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when she paid the purchase price or a price premium for the Baby Foods that did not deliver what was promised.  She paid the premium price on the assumption and understanding that the labeling of the Baby Foods was accurate and that it was healthy, superior quality, organic, and safe for babies and children to ingest.  Plaintiff would not have paid this money had she known that the Baby Foods contained any levels of the heavy metals, chemicals and/or toxins. Plaintiff was further injured because the Baby Foods that she purchased have no or *de minimis* value—or a value that was at least less than what they paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals and toxins. Damages can be calculated through expert testimony at trial.  Further, should Plaintiff encounter the Baby Foods in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Baby Foods.

21.     Defendant Hain Celestial Group is a Delaware corporation with its principal place of business and headquarters at 1111 Marcus Ave., #1, Lake Success, NY 11402.

22.     Defendant formulates, develops, manufactures, labels, distributes, markets, advertises, and sells the Baby Foods under the baby food brand name Earth's Best Organics

throughout the United States, including in this District, during the Class Period (defined below). The advertising, labeling, and packaging for the Baby Foods, relied upon by Plaintiff were prepared, reviewed, and/or approved by Defendant and its agents in New York, and were disseminated from New York by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein.

23. The marketing, advertising, packaging, and labeling for the Baby Foods were designed to encourage consumers to purchase the Baby Foods and reasonably misled the reasonable consumer, *i.e.,* Plaintiff and the Classes, into purchasing the Baby Foods. Defendant owns, manufactures, and distributes the Baby Foods, and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Baby Foods. Defendant is responsible for sourcing ingredients, manufacturing the products, and conducting all relevant quality assurance protocols, including testing, for the ingredients and finished Baby Foods.

# FACTUAL ALLEGATIONS

I. **THE BABY FOODS**

24.     The Baby Foods include the following:

a.  Whole Grain Rice Cereal



b.  Whole Grain Oatmeal Cereal



c.  Carrots Organic Baby Food (2- 6 months +)



d.  First Carrots Organic Baby Food (1- 4+ months)



e.  Sweet Potatoes Organic Baby Food (1- 4+ months)



f.  Sweet Potatoes Organic Baby Food (2- 6+ months)



g.  Winter Squash Organic Baby Food (2- 6+ months)



h.  First Peas Organic Baby Food (1- 4+ months)



i.  Apples Organic Baby Food (2- 6+ months)



j.  First Pears Organic Baby Food (1- 4+ months)



k.  Chicken and Brown Rice Organic Baby Food (2- 6+ months)



l. Organic Turkey Quinoa Apple Sweet Potato Homestyle Meal Puree



m. Organic Chicken Pot Pie Homestyle Meal Puree



n. Organic Sweet Potato Cinnamon Flax & Oat- Wholesome Breakfast Puree (2-6+ months)



## II.    ISLEADING CLAIMS AND OMISSIONS

### A.    "Earth's Best" Representations

25.    The following image is a representative example of Defendant's "Earth's Best" claims on the Baby Foods' packaging:



### B. "Stage" Representations

26. The following images are some representative examples of Defendant's "Stage" claim on the Baby Foods' packaging:






## C. "Organic Baby Food" Representations

27. The following images are some representative examples of Defendant's "Organic Baby Food" claim on the Baby Foods' packaging:

 

## D. Omissions

28. As discussed above, Defendant's Baby Food packaging also misleadingly omitted the presence, or risk of, heavy metals and perchlorate. Defendant intentionally omitted disclosure of the presence or risk of these substances in order to induce and mislead reasonable consumers like Plaintiff to purchase the Baby Food at premium prices.

**III.** **THE PRESENCE OF HEAVY METALS AND/OR PERCHLORATE AT ANY LEVEL IS MATERIAL TO A REASONABLE CONSUMER DUE TO THE INHERENT AND KNOWN RISKS OF CONSUMPTION AND/OR EXPOSURE.**

**A.** **Heavy Metals**

29.    At all times during the Class Period, Defendant knew or should have known that the Baby Foods contained heavy metals, had a risk of containing heavy metals, and/or were not sufficiently tested for heavy metals. During this time, Defendant omitted any reference to the presence, or the risk of the presence, of heavy metals from the Baby Foods' packaging.

30.    Defendant knew or should have known that heavy metals were a potentially dangerous contaminant that pose health risks to babies and children. Defendant knew or should have known that the standards for the presence of heavy metals in baby food have become increasingly stringent in recent years.

31.    Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize, the presence, or risk of, of heavy metals in the Baby Foods.

32.    Defendant knew or should have known that it owed consumers a duty of care to adequately test for heavy metals in the Baby Foods.

33.    Defendant knew or should have known that consumers purchased the Baby Foods based on the reasonable expectation that Defendant manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by babies. Defendant knew or should have known that consumers reasonably inferred that Defendant would hold the Baby Foods to the highest standards for preventing the presence, or risk, of heavy metals and for testing for heavy metals.

34.    A recent Congressional report from the Subcommittee on Economic and Consumer Policy published on February 4, 2021, found that many of the products produced by the country's largest commercial baby food manufacturers, including Defendant, "contain significant levels of

toxic heavy metals, including arsenic, lead, cadmium and mercury, which can endanger infant neurological development." Ex. 3.

35.     In its published response to this report, Defendant stated that it was "disappointed that the report examined outdated data and does not reflect our current practices" and "inaccurately characterized" its meeting with the Food and Drug Administration ("FDA.")[4] Defendant also indicated that it is now "conducting additional testing of finished product before shipping," but does not disclose the results or scope of that additional testing.[5]

36.     As that report notes, FDA and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects." Ex. 3 at 2.

37.     Arsenic, lead, mercury, and cadmium—four heavy metals found in the Baby Foods —are neurotoxins, or poisons which affect the nervous system. Exposures to these four heavy metals "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies." Ex. 3 at 2.

38.     The heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)." Ex. 1 at 6. Even in trace amounts found in food, these heavy metals can alter the developing brain and erode a child's IQ. Ex. 1 at 6.

---

[4] https://www.earthsbest.com/parents/faq/ (last accessed Feb. 10, 2021).
[5] *Id.*

39.     Research continues to confirm that exposures to food containing arsenic, lead, mercury, and cadmium causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]" Ex. 1 at 1.

### 1.     Arsenic

40.     The Baby Foods may contain arsenic which, when children are exposed to it early in life, causes "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants." Ex. 1 at 13. "There is no evidence that the harm caused by arsenic is reversible."[6] Arsenic exposure also creates a risk of "respiratory, gastrointestinal, haematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]" Ex. 1 at 13.

41.     Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and FDA have set standards for the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA as a maximum contaminant level).

42.     Moreover, the FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic.[7] The FDA is also considering limiting the action level for arsenic in rice cereals for infants to 100 ppb.[8]

---

[6] *Id.*

[7] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed February 4, 2021).

[8] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf (last accessed Feb. 10, 2021).

43. Defendant "does not regularly test [its] finished baby food products for inorganic arsenic content. It typically only tests ingredients." Ex. 3 at 16. As a result, it "routinely used ingredients with high levels of arsenic." Ex. 3 at 16.

44. Defendant set an internal limit of 100 ppb arsenic for its ingredients but, despite this, has sold Baby Foods "containing as much as 129 ppb inorganic arsenic" and Defendant "used ingredients testing as high as 309 ppb arsenic." Ex. 3 at 3.

### 2. Lead

45. The Baby Foods also may contain lead, which is another carcinogen and developmental toxin known to cause health problems.

46. Lead exposure can seriously harm children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth." Ex. 3 at 11.

47. Exposure to lead in food builds up over time. Buildup can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

48. Even very low exposure levels to lead "cause lower academic achievement, attention deficits and behavior problems. No safe level of exposure has been identified." Ex. 1 at 13.

49. One study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food. Ex. 1 at 7. Additionally, studies have established a link between lead exposure and Attention-Deficit/Hyperactivity Disorder (ADHD). Ex. 1 at 12.

50. Although there is no federal standard for lead in baby food, health experts, including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer

Reports, have agreed that lead in baby foods should not exceed 1 ppb.[9] "The European Union has set the maximum lead level in infant formula to 20 ppb."[10]

51.     On January 15, 2021, the EPA issued Lead and Copper Rule Revisions, with a new "trigger level" for treatment of 10 ppb lead in drinking water, effective March 16, 2021. 86 F.R. 28691 (Jan. 15, 2021). Previously, the EPA had required treatment for water exceeding lead concentrations of 15 ppb. 40 C.F.R. 141, Subpart I.

52.     Defendant "used ingredients containing as much as 352 ppb lead." Ex. 3 at 3. It also used "many ingredients with high lead content, including 88 that tested over 20 ppb lead and six that tested over 200 ppb lead." Ex. 3 at 3.

53.     Defendant used ingredients in the Baby Foods containing as much as 886.9 ppb lead and "ingredients with high lead content, including 483 that contained over 5 ppb lead, 89 that contained over 15 ppb lead, and 57 that contained over 20 ppb lead." Ex. 3 at 3. These levels are greater than the EPA's action level for drinking water, the FDA's standard for lead in bottled water, and the EU's standard for lead in infant formula. Ex. 3 at 27.

54.     Defendant only tested its ingredients, not its finished products, for lead and sold products with significant amounts of lead. Ex. 3 at 22.

### 3.     Mercury

55.     The Baby Foods also may contain mercury, which increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in utero. Exposure to mercury has been linked to higher risk of lower IQ scores and

---

[9] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed February 4, 2021).
[10] *Id.*

intellectual disability. Ex. 1 at 14. Mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children. Ex. 3 at 12-13.

56.     The EPA has set a maximum contaminant level for mercury in drinking water of 2 ppb. Ex. 3 at 32. Consumer advocates, including Healthy Babies Bright Futures, have "called for a goal of no measurable amount of mercury in baby food." Ex. 3 at 32.

57.     Defendant does not test its ingredients or finished products for mercury. Ex. 3 at 33.

### 4.     *Cadmium*

58.     Finally, the Baby Foods may contain cadmium which has been observed to cause anemia, liver disease, and nerve or brain damage in animals eating or drinking cadmium.

59.     Cadmium is linked to neurotoxicity, cancer, and kidney, bone, and heart damage. Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at levels common among U.S. children[.]" Ex. 1 at 14. Cadmium, like lead, "displays a troubling ability to cause harm at low levels of exposure." Ex. 1 at 14. The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[11]

60.     The EPA has set a maximum cadmium contaminant level for cadmium in drinking water of 5 ppb, 40 C.F.R. § 141.62, the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb. Ex. 3 at 29.

61.     Defendant has used multiple ingredients in its Baby Foods that contained more than 100 ppb cadmium, well-above the EU's upper limit on cadmium in baby food. Ex. 3 at 30-31.

---

[11] ATSDR, Public Health Statement: Cadmium (Sept. 2012), https://www.atsdr.cdc.gov/phs/phs.asp?id=46&tid=15 (last accessed Feb. 10, 2021).

62.     Consumer advocates, including Healthy Babies Bright Futures, have "called for a goal of no measurable amount of cadmium in baby food." Ex. 3 at 29.

63.     The FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[12]

64.     Despite the known risks of exposure to these heavy metals, Defendant has negligently, recklessly, and/or knowingly sold the Baby Foods without disclosing that they may contain levels of arsenic, mercury, cadmium and lead to consumers like Plaintiff.

65.     Additionally, Defendant knew or should have been aware that a consumer would be feeding the Baby Foods multiple times each day to his or her child, making it the primary source of food for the child.  This leads to repeated exposure of the heavy metals to the child.

66.     Defendant has wrongfully and misleadingly advertised and sold the Baby Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the baby's body to the point where poisoning, injury, and/or disease can occur.

67.     Defendant's omissions are material, false, misleading, and reasonably likely to deceive the public.  This is true especially considering the long-standing campaign by Defendant to market the Baby Foods as healthy, safe, and high-quality to induce consumers, such as Plaintiff, to purchase the products.  For instance, Defendant markets the Baby Foods as "Earth's Best,"

---

[12] FDA, Metals, https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm (last accessed Feb. 10, 2021).

appropriate for certain Stage[s] (i.e. "4+ months," "6+ months" etc.) and "organic baby food," both on the products' packaging and on Defendant's websites.

68. Using such descriptions and promises makes Defendant's advertising campaign deceptive based on presence, or risk of, of heavy metals in the Baby Foods. Reasonable consumers, like Plaintiff, would consider the mere presence or risk of heavy metals in the Baby Foods as a material fact in considering what baby food products to purchase. Defendant's above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Baby Foods are healthy, safe, high-quality and free of contaminants such as arsenic and lead. Moreover, Defendant knew or should have reasonably expected that the presence, or risk, of heavy metals in its Baby Foods is something an average consumer would consider in purchasing baby food. Defendant's representations and omissions are false, misleading, and reasonably likely to deceive the public.

69. Reasonable consumers, such as Plaintiff and other members of the Classes (as defined herein), would have no reason to believe and/or anticipate that the Baby Foods are not "Earth's Best," appropriate for consumption by a baby in the stated Stage, or "organic baby food." Non-disclosure and/or concealment of the presence, or risk of, heavy metals in the Baby Foods coupled with the misrepresentations alleged herein by Defendant suggesting that the food is appropriate for consumption by babies is intended to and does, in fact, cause consumers to purchase a product Plaintiff and members of the Classes would not have bought if the true quality was disclosed. As a result of these false or misleading statements and omissions, Defendant has generated substantial sales of the Baby Foods.

70. Plaintiff brings this action individually and on behalf of all other similarly situated consumers who purchased the Baby Foods, in order to cause the disclosure of the presence, or risk,

of heavy metals that pose a known risk to infants in the Baby Foods, to correct the false and misleading perception Defendant has created in the minds of consumers that the Baby Foods are high quality, safe, and healthy, and to obtain redress for those who have purchased the Baby Foods.

**B.     Perchlorate**

71.     At all times during the Class Period, Defendant knew or should have known that the Baby Foods contained perchlorate, were at risk of containing perchlorate, and/or were not sufficiently tested for perchlorate. During this time, Defendant omitted any reference to the presence or risk of perchlorate from the Baby Foods' packaging.

72.     Defendant knew or should have known that perchlorate is a potentially dangerous contaminant that poses health risks to babies and children.

73.     Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize, the presence of perchlorate in the Baby Foods.

74.     Defendant knew or should have known that it owed consumers a duty of care to adequately test for perchlorate in the Baby Foods.

75.     Defendant knew or should have known that consumers purchased the Baby Foods based on the reasonable expectation that Defendant manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by babies. Defendant knew or should have known that consumers reasonably inferred that Defendant would hold the Baby Foods to the highest standards for preventing the presence or risk of perchlorate and for testing for perchlorate.

76.     Perchlorate disrupts thyroid functions that are crucial to brain development. Perchlorate has been "linked to IQ loss among children born to mothers with thyroid dysfunction."[13]

---

[13] Healthy Babies Bright Futures Report, at 8.

77. The levels of perchlorate in children's food has increased significantly from 2005. Perchlorate—which is both a naturally occurring and manmade chemical—was approved by the FDA in 2005 for use as an antistatic in plastic food packaging. In 2016, the FDA expanded the approval to cover dry food handling equipment. Hypochlorite bleach, which is used to disinfect food processing equipment, can also create perchlorate as a product of degradation.

78. The dangers of perchlorate in human food are recognized by the FDA.[14]

79. The EPA has also recognized the dangers of perchlorate in drinking water and has set the maximum contaminant level goal for perchlorate in drinking water of 56 µg/L. 85 F.R. 43990 (July 21, 2020).

80. Still, certain Baby Foods are sold by Defendant that may contain levels of perchlorate.

81. Despite the risk and/or actual presence of these non-organic and potentially harmful chemicals, Defendant prominently warrants, claims, features, represents, advertises, or otherwise markets the Baby Foods as "Earth's Best," appropriate for consumption by a baby in the stated Stage, and "organic baby food" and fails to disclose the presence, or risk of, heavy metals and perchlorate.

---

[14] FDA, Exploratory Survey Data on Perchlorate in Food 2004-2005, https://www.fda.gov/food/chemicals/exploratory-survey-data-perchlorate-food-2004-2005 (last accessed Feb. 10, 2021) ("Human exposure to sufficient doses of perchlorate can interfere with iodide uptake into the thyroid gland, disrupting its functions and potentially leading to a reduction in the production of thyroid hormones.").

**IV.    DEFENDANT FALSELY ADVERTISES THE BABY FOODS AS NUTRITIOUS AND HEALTHY WHILE OMITTING ANY MENTION OF THE RISK AND/OR ACTUAL INCLUSION OF HEAVY METALS AND PERCHLORATE.**

82.    Defendant formulates, develops, manufactures, labels, packages, distributes, markets, advertises, and sells its extensive Earth's Best lines of baby food products across the United States, including the Baby Foods.

83.    Defendant positions the Baby Foods as "organic" and "Earth's Best" to place them within the premium category of baby food.

84.    Defendant has represented a commitment to using real and simple ingredients. Indeed, the packaging emphasizes to consumers that the Baby Foods are organic and high-quality.

85.    Defendant had a duty to ensure that the Baby Foods lived up to these representations and marketing positioning the Baby Food as high-quality and premium. As such, Defendant knew or should have known that the Baby Foods had a high risk of including, and/or actually include, heavy metals, perchlorate, and/or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

86.    Defendant specifically promises on its website that it works "collaboratively with the Baby Food Council (composed of other manufacturers, the Environmental Defense Fund and Cornell University), the Food and Drug Administration and the Department of Agriculture to continuously refine and improve upon the standards to ensure our products exceed safety and nutrition standards – including reducing the levels of heavy metals that occur naturally in soil and water."[15] As such, Defendant knew or should have known that the Baby Foods contained, or had a risk of containing, heavy metals, perchlorate, and/or other ingredients that do not conform to the labels, packaging, advertising and statements on the Baby Foods.

---

[15] https://www.earthsbest.com/parents/faq/ (last accessed Feb. 10, 2021).

87. Based on these false representations, Defendant charges a premium, knowing that the claimed premium quality of the Baby Foods (as well as all of the other alleged false and/or misleading representations discussed herein) is something an average consumer would consider as a reason in picking a more expensive baby food product. By negligently and/or deceptively representing, marketing, and advertising the Baby Foods as organic, and safe for babies' consumption, Defendant wrongfully capitalized on, and reaped enormous profits from, consumers' strong preference for premium baby food products.

88. Additionally, Defendant knew or should have known that its ingredients, and the final products, could contain materials such as toxins, heavy metals, and perchlorate, and yet they did not test all ingredients and finished products, including the Baby Foods, for such materials.

89. The Baby Foods are available at numerous retail and online outlets throughout the United States, including in Illinois and New York.

90. Third-party testing, as well as Defendant's internal testing, has made clear that the Baby Foods may in fact contain levels of both heavy metals and/or perchlorate.

91. As a result of Defendant's omissions, a reasonable consumer would have no reason to suspect the risk and/or presence of heavy metals and/or other ingredients that do not conform to the labels, packaging, advertising, and statements in the Baby Foods without conducting his or her own scientific tests, or reviewing third-party scientific testing of these products.

92. Defendant has wrongfully and misleadingly advertised and sold the Baby Foods without any label or warning indicating to consumers that these products may contain heavy metals, perchlorate, and/or other ingredients that do not conform to the labels, packaging, advertising, and statements, or that these toxins can accumulate over time in the baby's body to the point where poisoning, injury, and/or disease can occur.

## V. DEFENDANT HAD KNOWLEDGE AND NOTICE OF ITS BREACHES OF ITS EXPRESS AND IMPLIED WARRANTIES.

93.     Defendant had sufficient notice of its breaches of express warranties. Defendant has, and had, exclusive knowledge of the physical and chemical makeup of the Baby Foods. Defendant also had exclusive knowledge of its suppliers and whether any of them supplied ingredients at risk for containing perchlorate.

94.     Additionally, Defendant received notice of the contaminants in its baby food products, including the Baby Foods, through the Healthy Babies Bright Futures nonprofit organization, which found levels of heavy metals and perchlorate in its Baby Food products.

95.     Defendant did not change its packaging or labeling to include a disclaimer that the Baby Foods contained, or may contain, any levels of heavy metals or perchlorate.

## VI. PRIVITY EXISTS WITH THE PLAINTIFF AND THE PROPOSED CLASSES.

96.     Defendant knew that consumers such as Plaintiff and the proposed Classes would be the end purchasers of the Baby Foods and the target of its advertising and statements.

97.     Defendant intended that the warranties, advertising, labeling, statements, and representations would be considered by the end purchasers of the Baby Foods, including Plaintiff and the proposed Classes.

98.     Defendant directly marketed to Plaintiff and the proposed Classes through statements on its website, labeling, advertising, and packaging.

99.     Plaintiff and the proposed Classes are the intended beneficiaries of the expressed and implied warranties.

## CLASS ACTION ALLEGATIONS

100.     Plaintiff brings this action individually and on behalf of the following Classes pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

All persons in the United States who, from October 1, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Class").

101. Plaintiff brings this action individually and on behalf of the following Illinois Sub-Class:

All persons who are citizens of the State of Illinois who, from October 1, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Illinois Sub-Class");

102. Excluded from the Class and Sub-Classes are the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

103. This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable. Purchasers of the Baby Foods can identify their purchases through receipts, store rewards programs, and their own testimony.

104. The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Class members in a single action will provide substantial benefits to the parties and Court.

105. Questions of law and fact common to Plaintiff and the Classes include, but are not limited to, the following:

a. whether Defendant owed a duty of care to Plaintiff and the Classes;

b. whether Defendant knew or should have known that the Baby Foods contained, or may contain, heavy metals;

c. whether Defendant knew or should have known that the Baby Foods contained, or may contain, perchlorate;

d. whether Defendant wrongfully represented and continues to represent that the Baby Foods are safe for human infant, baby and toddler consumption;

e.  whether Defendant wrongfully represented and continues to represent that the Baby Foods are healthy, superior quality, nutritious and safe for consumption;

f.  whether Defendant wrongfully represented and continues to represent that the Baby Foods are "Earth's Best";

g.  whether Defendant wrongfully represented and continues to represent that the Baby Foods appropriate for consumption by various Stages of babies;

h.  whether Defendant wrongfully represented and continues to represent that the Baby Foods are "organic baby food";

i.  whether Defendant wrongfully failed to disclose that the Baby Foods contained, or may contain, heavy metals and/or perchlorate;

j.  whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

k.  whether those representations are likely to deceive a reasonable consumer;

l.  whether a reasonable consumer would consider the presence, or risk of, heavy metals and/or perchlorate as a material fact in purchasing baby food;

m.  whether Defendant had knowledge that those representations were false, deceptive, and misleading;

n.  whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

o.  whether a representation that a product is healthy, superior quality, nutritious and safe for consumption and does not contain arsenic, mercury, cadmium, lead and/or perchlorate is material to a reasonable consumer;

p.  whether Defendant's representations and descriptions on the labeling of the Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

q.  whether Defendant violated the laws of the State of Illinois;

r.  whether Defendant violated the laws of the State of New York;

s.  whether Defendant breached its express warranties;

t.  whether Defendant breached its implied warranties;

u.  whether Defendant engaged in unfair trade practices;

v.  whether Defendant engaged in false advertising;

w.  whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

x.  whether Plaintiff and the members of the Classes are entitled to actual, statutory, and punitive damages; and

y.  whether Plaintiff and members of the Classes are entitled to declaratory and injunctive relief.

106.  Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Classes. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

107.  Plaintiff's claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

108.  Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interests incompatible with the interests of the Classes, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

109.  Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative litigation, it would be infeasible for members of the Classes to redress the wrongs done to them.

110.  Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

111.  As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

### COUNT I
**Breach of Express Warranty**
**Against Defendant on Behalf of the Class**
**(or, alternatively, the State Subclasses)**

112.    Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

113.    Defendant marketed and sold the Baby Foods into the stream of commerce with the intent that the Baby Foods would be purchased by Plaintiff and the Class.

114.    Defendant expressly warranted, advertised, and represented to Plaintiff and the Class that its Baby Foods are:

      a.   "Earth's Best";

      b.   Appropriate for certain Stages of babies; and

      c.   "organic baby food."

115.    Defendant made these express warranties regarding the Baby Foods' quality, ingredients, and fitness for consumption in writing through its website, advertisements, and marketing materials and on the Baby Foods' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Baby Foods.

116.    Defendant's advertisements, warranties, and representations were made in connection with the sale of the Baby Foods to Plaintiff and the Class. Plaintiff and the Class relied on Defendant's advertisements, warranties, and representations regarding the Baby Foods in deciding whether to purchase Defendant's products.

117.    Defendant's Baby Foods do not conform to Defendant's advertisements, warranties and representations in that they:

      a.   Are not suitable for consumption by human infants, babies and toddlers; and

b.  Contain, or may contain, levels of various heavy metals and/or perchlorate.

118.  Defendant was on notice of this breach as they were aware of the included heavy metals and/or perchlorate in the Baby Foods and based on the public investigation by the Healthy Babies Bright Futures report that showed its baby food products as unhealthy as well as by the House Report.

119.  Privity exists because Defendant expressly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were healthy, organic, and suitable for consumption and by failing to make any mention of heavy metals, perchlorate, and/or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

120.  As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate, and/or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

121.  Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to its express warranties and resulting breach.

**COUNT II**
**Breach of Implied Warranty of Merchantability**
**Against Defendant on Behalf of the Class**
**(or, alternatively, the State Subclasses)**

122.  Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

123.  Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class.

124. There was a sale of goods from Defendant to Plaintiff and the Class.

125. At all times mentioned herein, Defendant manufactured or supplied the Baby Foods, and prior to the time the Baby Foods were purchased by Plaintiff and the Class, Defendant impliedly warranted to them that the Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact made on the Baby Foods' containers and labels, including that the food was organic, high-quality and safe and appropriate for human infant consumption. Plaintiff and the Class relied on Defendant's promises and affirmations of fact when they purchased the Baby Foods.

126. The Baby Foods were not fit for their ordinary use, consumption by babies, and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals, perchlorate, and/or other ingredients or contaminants that do not conform to the packaging.

127. The Baby Foods did not conform to Defendant's affirmations of fact that they were organic because they contained the chemical perchlorate.

128. Defendant breached its implied warranties by selling Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals, perchlorate, and/or other ingredients or contaminants that do not conform to the representations on the Baby Foods' packaging.

129. Defendant was on notice of this breach, as it was aware of the heavy metals and/or perchlorate included, or at risk, in the Baby Foods, and based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby food products as unhealthy and contaminated.

130. Privity exists because Defendant impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were

organic, high-quality and suitable for consumption by babies, and by failing to make any mention of heavy metals or perchlorate.

131.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or perchlorate.

132.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to its implied warranties and resulting breach.

## COUNT III
### Fraudulent Misrepresentation
### Against Defendant on Behalf of the Class
### (or, alternatively, the State Subclasses)

133.    Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

134.    Defendant falsely represented to Plaintiff and the Class that its Baby Foods are:

a.    "Earth's Best";

b.    Appropriate for certain Stages of babies; and

c.    "organic baby food."

135.    Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its Baby Foods.

136.    Defendant knew that its representations about the Baby Foods were false in that the Baby Foods contained, or were at risk of containing, levels of heavy metals, perchlorate, and/or other ingredients that do not conform to the products' labels, packaging, advertising, and

statements. Defendant allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

137.     Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Baby Foods to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted the Baby Foods, Plaintiff's and the Class's reliance on Defendant's misrepresentations was justifiable.

138.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate, and/or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

139.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT IV**
**Fraud by Omission**
**Against Defendant on Behalf of the Class**
**(or, alternatively, the State Subclasses)**

140.     Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

141.     Defendant concealed from and failed to disclose to Plaintiff and the Class that its Baby Foods contained, or were at risk of containing, heavy metals, perchlorate, and/or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

142.     Defendant was under a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients and suitability of the Baby Foods because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior

position to know the actual ingredients, characteristics, and suitability of the Baby Foods for consumption by babies; and (3) Defendant knew that Plaintiff and the Class could not reasonably have been expected to learn or discover that the Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Baby Foods.

143. The facts concealed or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Baby Foods.

144. Plaintiff and the Class justifiably relied on the Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Baby Foods, which is inferior when compared to how the Baby Foods are advertised and represented by Defendant.

145. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate, and/or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

146. Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT V**
**Negligent Misrepresentation**
**Against Defendant on Behalf of the Class**
**(or, alternatively, the State Subclasses)**

147. Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

148. Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of the Baby Foods.

149. Defendant breached its duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove the Baby Foods from the marketplace or to take other appropriate remedial action.

150. Defendant knew or should have known that the ingredients, qualities, and characteristics of the Baby Foods were not as advertised or suitable for their intended use, consumption by infants, and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that: (1) certain Baby Foods were not organic because they contained, or were at risk of containing, levels of perchlorate; (2) the Baby Foods were not nutritious, superior quality, pure, healthy and safe for consumption because they contained, or had a risk of containing, levels of heavy metals, perchlorate, and/or other ingredients or contaminants that do not conform to the packaging; (3) the Baby Foods were adulterated, or at risk of being adulterated, by heavy metals and perchlorate; and (4) the Baby Foods were otherwise not as warranted and represented by Defendant.

151. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known they contained, or were at risk of containing, heavy metals, perchlorate, and/or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

152.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**COUNT VI**
**Unjust Enrichment**
**Against Defendant on Behalf of the Class**
**(or, alternatively, the State Subclasses)**

153.     Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

154.     Substantial benefits have been conferred on Defendant by Plaintiff and the Class through the purchase of the Baby Foods. Defendant knowingly and willingly accepted and enjoyed these benefits.

155.     Defendant either knew or should have known that the payments rendered by Plaintiff and the Class were given and received with the expectation that the Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

156.     Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the Class.

157.     Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

158.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**Violation of Illinois Consumer Fraud Act, 815 ILCS 505/**
**Against Defendant on Behalf of the Illinois Sub-Class**

159.     Plaintiff incorporates by reference and allege each and every allegation contained above, as though fully set forth herein.

160.     Defendant is a "person" within the meaning of the Illinois Consumer Fraud Act ("ICFA").

161.     Defendant violated the ICFA by knowingly misrepresenting the true quality and ingredients of the Baby Foods by falsely claiming that the Baby Foods are:

   a.   "Earth's Best";

   b.   Appropriate for certain Stages of babies; and

   c.   "organic baby food".

162.     Defendant knew or should have known that the Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing heavy metals, perchlorate, and/or other ingredients or contaminants that do not conform to the packaging.

163.     Defendant's pattern of knowing misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the Illinois Sub-Class with respect to the Baby Foods' quality, ingredients, and suitability for consumption by babies.

164.     Defendant intended that Plaintiff and the Illinois Sub-Class would rely on Defendant's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Baby Foods' quality, ingredients, and suitability for consumption by babies.

165.     Defendant's conduct and omissions described herein occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

166.     The facts concealed or not disclosed by Defendant were material facts in that Plaintiff and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods.  Had Plaintiff known the Baby Foods did not have the quality advertised by Defendant or that the Baby Foods contained, or were at risk of containing, heavy metals and perchlorate, she would not have purchased the Baby Foods.

167.     Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this fraudulent course of conduct.

168.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Illinois Sub-Class have suffered actual damages in that they purchased the Baby Food that was worth less than the price they paid.

169.     Plaintiff and the members of the Illinois Sub-Class would not have purchased the Baby Food at all had they known of the presence or risk of heavy metals, perchlorate and/or any other ingredients or contaminants that do not conform to the packaging claims.

170.     Pursuant to ILCS 505/10a, Plaintiff and the Illinois Sub-Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the ICFA.

### COUNT VIII
**Violation of Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/2, *et seq.*
Against Defendant on Behalf of the Illinois Sub-Class**

171.     Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

172.     Defendant is a "person" within the meaning of the Illinois Deceptive Trade Practices Act (IDTPA).

173.     Defendant willingly engaged in deceptive trade practices, in violation of the IDTPA, by representing that the Baby Foods had characteristics, ingredients, benefits and qualities that they did not have, falsely representing that the Baby Foods were of a particular standard, quality or grade, and/or deceptively omitting material information.  Specifically, Defendant falsely claimed that the Baby Foods:

    a.   "Earth's Best";

    b.   Appropriate for certain Stages of babies; and

    c.   "organic baby food".

174.     Defendant knew or should have known that the Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing, heavy metals, perchlorate, and/or any other ingredients or contaminants that do not conform to the packaging claims.

175.     Defendant's misrepresentations, concealment, omissions, and other deceptive conduct was likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the Illinois Sub-Class with respect to the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by babies.

176.     Defendant intended that Plaintiff and the Illinois Sub-Class would rely on Defendant's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by babies.

177.    Defendant's conduct and omissions described herein occurred repeatedly in Defendant's trade or business and was capable of deceiving a substantial portion of the consuming public.

178.    The facts concealed or not disclosed by Defendant were material facts in that Plaintiff and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods.  Had Plaintiff known the Baby Foods did not have the quality advertised by Defendant, she would not have purchased the Baby Foods.

179.    Defendant intended that Plaintiff and the Class would rely on its deception by purchasing the Baby Foods, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

180.    Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this fraudulent course of conduct.

181.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Illinois Sub-Class have suffered actual damages in that they purchased the Baby Food that was worth less than the price they paid.

182.    Plaintiff and the members of the Illinois Sub-Class would not have purchased the Baby Foods at all had they known of the presence of these heavy metals, perchlorate, and/or other ingredients or contaminants that do not conform to the packaging.

183.    Pursuant to 815 ILCS 510/2 and 510/3, Plaintiff and the Illinois Sub-Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the IDTPA.

## COUNT IX
### Violations of New York's Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349
### Against Defendant on behalf of the New York Sub-Class

184.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

185.    New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

186.    In its sale of goods throughout New York, Defendant conducts business and trade within the meaning and intendment of New York General Business Law § 349.

187.    Defendant violated N.Y. Gen. Bus. Law. § 349 by representing that its Contaminated Baby Foods were "Earth's Best"; appropriate for certain Stages of babies; and "organic baby food" and safe baby food was deceptive because the Contaminated Baby Foods instead had a risk of and/or actual inclusion of Heavy Metals and Perchlorate, including levels that exceed FDA and EPA guidance.

188.    Defendant intentionally represented that the Contaminated Baby Foods were of a particular standard, grade, or quality when they in fact had a risk and/or actual inclusion of Heavy Metals and Perchlorate and were not safe for consumption.

189.    The facts that Defendant concealed or misrepresented were material in that any Plaintiff and any other reasonable consumer would have considered them when deciding whether to purchase the Contaminated Baby Foods.

190.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

191.    Defendant has engaged and continues to engage in deceptive conduct in violation of the New York General Business Law.

192.     Defendant's misrepresentations and deceptive acts or practices resulted in Plaintiff and other reasonable consumers suffering actual damages when they purchased the Contaminated Baby Foods that were worth less than the price paid and that they would not have purchased at all had they known of the risk and/or actual inclusion of Heavy Metals and Perchlorate. Defendant intended for Plaintiff and other reasonable consumers to rely on its deceptive misrepresentations and conduct when purchasing its Contaminated Baby Foods.

193.     As a direct and proximate result of these violations, Plaintiff and other reasonable consumers have been harmed, and that harm will continue unless Defendant is enjoined from misrepresenting the quality and ingredients of its Contaminated Baby Foods described herein.

194.     Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff and the Class and/or Sub-Class seek injunctive and declaratory relief, full refund, actual and punitive damages, and attorneys' fees.

### COUNT X
### Violations of New York False Advertising Law, N.Y. Gen. Bus. Law § 350
### Against Defendant on behalf of the New York Sub-Class

195.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

196.     New York General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

197.     Pursuant to N.Y. Gen. Bus. Law § 350, false advertising is defined as "advertising, including labeling, or a commodity… if such advertising is misleading in a material respect."

198.     Defendant's claims that the Contaminated Baby Foods were "Earth's Best"; appropriate for certain Stages of babies; and "organic baby food" and safe baby food were untrue or misleading because such claims failed to disclose that the Contaminated Baby Foods instead had a risk of and/or actual inclusion of Heavy Metals and Perchlorate, including levels that exceed FDA and EPA guidance.

199. Defendant knew or should have known that such claims were false or misleading.

200. Such false and misleading claims and representations made by Defendant were material in that Plaintiff and any reasonable consumer would have considered them when deciding to purchase the Contaminated Baby Foods.

201. Defendant, including its agents and distributors, made untrue, deceptive, and misleading assertions and representations about the alleged quality, characteristics, and nature of the Contaminated Baby Foods.

202. Defendant's conduct caused Plaintiff and the Class to suffer actual damages when they purchased the Contaminated Baby Foods that were worth less than the price paid and that they would not have purchased at all had they known of the risk and/or actual inclusion of Heavy Metals and Perchlorate, including levels that exceed FDA and EPA guidance.

203. As a direct and proximate result of Defendant's violation of N.Y. Gen. Bus. Law § 350, Plaintiff and the Class have been injured, and that harm will continue unless Defendant is enjoined from misrepresenting the quality, ingredients, standards, and suitability for consumption of its Contaminated Baby Foods.

204. Pursuant to N.Y. Gen. Bus. Law § 350, et seq., Plaintiff and the Class and/or Sub-Class seek injunctive and declaratory relief, full refund, actual and punitive damages, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendant as to each and every count, including:

A. An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.      An order enjoining Defendant from selling the Baby Foods until the levels of heavy metals and/or perchlorate are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

C.      An order enjoining Defendant from selling the Baby Foods in any manner suggesting or implying that they are healthy and safe for consumption;

D.      An order requiring Defendant to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.      An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I.      An order requiring Defendant to pay punitive damages on any count so allowable;

J.      An order awarding attorney's fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class; and

K.      An order providing for all other such equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 22, 2021

Respectfully submitted,

CUNEO GILBERT & LADUCA, LLP

By*: s/ Christian Hudson*

Christian Hudson, Bar No. CH2626
Charles LaDuca
Katherine Van Dyck
C. William Frick
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone:(202) 789-3960
Facsimile: (202) 789-1813
E-mail: charles@cuneolaw.com
        kvandyck@cuneolaw.com
        bill@cuneolaw.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

Robert K. Shelquist
Rebecca A. Peterson
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rkshelquist@locklaw.com
        rapeterson@locklaw.com

LITE DEPALMA GREENBERG, LLC
Joseph DePalma
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: jdepalma@litedepalma.com
        scruzhodge@litedepalma.com

*Attorneys for Plaintiff Charlotte Willoughby*